## WATSON *v.* EVERS and others.

*(Circuit Court, S. D. Mississippi.* May Term, 1882.)

1. JURISDICTION—NECESSARY PARTIES—CITIZENSHIP.

   Where the contract sued on was entered into between plaintiff and defendants, one of whom was a citizen of the same state with plaintiff, and the other a citizen of a foreign country, and both defendants are not only necessary but indispensable parties to the controversy, as shown from the face of the bill, this court is without jurisdiction.

2. SAME—CASE STATED.

   Where the bill charged that complainant was induced by false and fraudulent representations of defendant, a citizen of Great Britain, and another party, a citizen of the same state with the complainant, to enter into contracts with defendant, and a contract with defendant and such third party, and that by false and fraudulent representations of both defendant and such third party he was induced to advance money pursuant to said contracts for the purchase of lands to be owned and held by them in common, *held*, that as to the contracts made with defendant alone, such third party was not a necessary party to the suit; but as to the contract entered into by all three, and which contract was recited in the bill for relief, such third party was not only a necessary, but an indispensable party to the suit, and that, being a citizen of the same state with complainant, this court has no jurisdiction to grant the relief sought.

HILL, D. J. The questions now presented for decision arise upon defendants' motion to dismiss the bill and their demurrer thereto, which will be considered together.

The bill in substance states that complainant and defendant Baldwin are both citizens and residents of Chicago, Illinois; that defendant Evers is a subject of Queen Victoria, and resident of England;

that in the fall of 1881 Evers and Baldwin were together in Chicago, and there met complainant, who was introduced by Baldwin to Evers; that Evers and Baldwin, combining and conniving together, represented to complainant that Evers resided in London, England, and was a partner in a firm of large British capitalists, and that Evers was their representative in America, and controlled, or could control, a large and very advantageous enterprise in Mississippi lands, and jointly and separately proposed and urged an agreement between Evers and complainant to purchase from the levee commissioners of Mississippi about 640,000 acres of land situated in different counties in this state; that the lands were well timbered and valuable, and could be purchased at 20 cents per acre; that complainant, confiding in the truth of these statements, entered into a written agreement with Evers, signed by complainant and by Baldwin, in Evers' name, as agent for Evers, dated October 10, 1881. The substance of this agreement, which is exhibited with and made a part of this bill, is that the lands were to be purchased at 20 cents per acre; that they should be sold; the cost and expenses were to be repaid to those who had advanced them; then complainant and Evers were to account to Baldwin for the one-fourth of the balance of the lands, or their proceeds, and divide the residue between them.

The bill charges various other fraudulent and false representations made by Baldwin and Evers, which induced Watson to enter into another written agreement, dated October 25, 1881, which recited that Evers had purchased 663,785 acres of land, and that Evers had bargained and sold to Watson an undivided half interest therein, at 20 cents per acre—payable, $10,000 down, the balance to be paid when the deed should be executed, which was to be done before the tenth of November thereafter; that at the time the last agreement was entered into, Baldwin and Evers falsely and fraudulently represented to Watson that Evers had before that time purchased said lands, and had paid for the same out of his own resources at 20 cents per acre.

The bill further alleges that Watson, relying upon these statements as true, and that 706,360 acres of land had been so purchased, and the further statement that Evers had before that time paid fees to commissioners to the amount of $3,531.80, and for recording deeds the sum of $1,600, aggregating the sum of $146,403.60; that the one-half of this sum, Watson's share, amounted to $73,201.90,—that Watson, relying on the truth of all these statements, paid to Evers said sum, and took his receipt therefor, which is exhibited with the bill.

The bill further avers that the sum so paid by Watson to Evers is every cent that has ever been paid for said lands in any way, and that Ever's statements as to his having paid anything for said lands out of his own resources are wholly false and untrue; and that Evers, out of the money so paid to him, and with levee bonds and coupons, purchased at a large discount, at 10 cents per acre, and paid therefor out of the money so received; that Evers purchased the lands described in the schedule thereof filed with the bill, at the price of 10 cents per acre; that the sum paid therefor amounted to $48,454.22—$4,837.98 being in money, and the remainder in levee bonds and coupons; that although Evers has obtained the legal title to said lands, he now refuses to convey to Watson the title to the one moiety, as provided for in-either of the agreements stated.

The bill further alleges that after said purchase was made and the title obtained, Baldwin falsely represented to Watson that he controlled certain state lands or internal-improvement lands lying within the same boundaries, estimated at 150,000 acres; that the same were exempt from taxation; with other false and fraudulent representations in relation to such lands and the price at which they could be purchased, which were made to induce Watson to enter into another agreement in regard to the lands embraced in the former agreements; whereupon another written agreement was entered into between Watson and Evers, and to which Baldwin became a party, and signed by each of them, dated December 1, 1881. This agreement recites that Watson, Evers, and Baldwin were then interested in 706,000 acres of land then purchased and paid for, and the title held in Evers' name. The agreement provides in substance that Baldwin should procure these internal-improvement or state lands,—not less than 150,000 acres; that a joint-stock company or corporation should be formed, and that the stock or shares therein should be equally divided between Baldwin, Evers, and Watson; that all the lands before that time purchased and held as stated should, with that purchased by Baldwin, be conveyed to said company, and held and disposed of by said company as the property thereof.

The bill alleges that Baldwin never did purchase any lands whatever, and that his statements in relation thereto were false, and designed to deceive and defraud Watson, and to induce him to enter into the last agreement.

The bill further alleges that Evers, with a portion of the money so fraudulently procured from Watson, purchased other lands situate within this state, amounting to some 12,000 acres.

The bill contains many other charges of fraud, which need not be stated to a determination of the question upon the decision now made.

The prayer of the bill is for the apppointment of a receiver; that an account may be taken of the costs and expenses in the purchase of the lands described; that Evers be declared as holding the legal title to these lands for the use of Watson as the equitable owner; and that the legal title be divested out of Evers and vested in Watson.

The only question that need be considered is as to the jurisdiction of this court to entertain the cause and grant the relief sought as shown from the face of the bill, and which arises from the citizenship of complainant and Baldwin, both being in the same state, and this depends upon the question as to whether or not Baldwin is a necessary and indispensable party to the suit, as shown from the statements and allegations made in the bill. I am inclined to the opinion that, under the written agreements or contracts of the tenth and twenty-sixth of October, Baldwin was not such a necessary party to the suit as would debar this court of its jurisdiction of the cause, and for the reason that under these contracts Baldwin was not a party to them, although charged in the bill with being one of the conspirators in fraudulently procuring them, the contracts themselves being entirely between Watson and Evers; but the contract of December 1, 1881, is upon its face a contract and agreement between Baldwin, Evers, and Watson, each acting for himself, or himself and those whom Evers claimed to represent,—the agreement being that Baldwin was to convey 150,000 acres of land to the company or corporation to be formed, and Evers and Watson were to convey to it the lands they had purchased, and then the capital stock or shares were to be divided into three parts; one to be held by Baldwin, one by Watson, and the other by Evers, or himself and his associates. This agreement upon its face shows such an interest in Baldwin as makes him not only a necessary but an indispensable party to the controversy, as shown from the face of the bill, and this written contract, signed by all the parties to it, and which is made a part of the bill. Baldwin, being made a party, would be concluded by such decree as might be rendered in the cause, and if he were not made a party his interest in the controversy, as shown from the bill, is such that the bill would have been demurrable by reason of his not having been made a party, and for the reason that his rights, as shown by the bill, are such as to entitle him to a hearing, and the assertion and enforcement of his

rights; and, which is necessary, to the adjudication and settlement of the right of Watson and Evers. Baldwin and Evers each has a right to deny the charges of fraud made in the bill, and to call upon Watson to establish that which he has alleged.

The rules of law applicable to the questions presented are so familiar to the profession that reference to the authorities is unnecessary. I am satisfied that for the reasons stated this court is without jurisdiction to entertain the cause, and grant the relief sought by the bill. Therefore the demurrer must be sustained.